## A. R. HOMESLEY v. ELIAS & COHEN.

By a written contract, 25th January, 1865, A agreed to sell and deliver to B, at the Charlotte depot, 200 bales of cotton, to weigh from 300 to 400 pounds at $1.50 per pound, in payment of which B agrees to deliver at the Cherryville depot, cotton yarns at $45 per bunch of 5 pounds, both cotton and yarn to be delivered in lots as called for, and the whole in 6 months. A delivered 116 bales of the 200, and refused to deliver any more ; and at the time of such refusal, 23d July, 1865, B had delivered 2,000 bunches of yarn, which overpaid for the 116 bales of cotton by 13,600 pounds of cotton. In an action against A for not delivering the balance of the 200 bales, to-wit: 84 bales:

*It was held,* 1, that B was entitled to recover the value of the 13,600 pounds of cotton, at the place agreed on for delivery, at the time of refusal, 23d July, 1865, to be estimated in the legal tender of the United States.

*Held further,* that B was further entitled to recover the value at the place of delivery, of such a number of pounds of cotton as would make 84 bales of 300 pounds each, to-wit, 25,284 pounds, from which is to be deducted the 13,600 already charged, leaving remaining to be accounted for 11,684 pounds

*Held further,* that A was entitled to *recoup* from the above damages, the value on the said 25th July, at the Cherryville depot, of the quantity of yarn, which by the terms of the contract B was to pay for the 11,684 pounds of cotton, to-wit: 1,947 pounds of yarn; A is also entitled to deduct the cost of hauling the 84 bales of cotton to the depot from his warehouse.

*Held further,* that if, after deducting the value of the 1,147 pounds of yarn and the cost of hauling, from the damages the jury may assess in respect to the 11,684 pounds of cotton, any excess shall remain, it will be added to the damages assessed in respect to the 13,600 pounds of cotton. If the value of the yarn shall exceed the damages assessed in respect to the 11,-682 pounds of cotton, the excess will be deducted from the damages in respect to the 13,600 pounds of cotton.

This was a CIVIL ACTION, for breach of contract, tried before his Honor Judge BUXTON, at the Spring Term, 1876, of the Superior Court of UNION County.

The summons in this suit issued 5th March, 1870, returnable to the Superior Court of Cleaveland county, from

whence it was removed, on affidavit, to the county of Gaston, and there tried (Fall Term, 1871), when the jury rendered a verdict in favor of the plaintiff, and he had judgment; from which judgment defendants appealed. See 66 N. C. Rep., 330. A new trial was awarded, and by consent the cause was removed to Union county.

The contract (written) upon which the suit was brought was entered into the 25th day of January, 1865, and contained substantially the following stipulations: That the defendants agreed to sell the plaintiff 200 bales of cotton, of middling quality, weighing from 300 to 400 pounds per bale, to be delivered as called for at the depot in Charlotte within six months from date of contract.

The plaintiff agreed to pay for the cotton at the rate of $1.50 per pound, in cotton yarn, at $45 per bunch of five pounds, to be delivered at Cherryville depot in lots, the whole of said yarn to be delivered within six months.

The plaintiff contended, and proved by his own and the testimony of others, that he had received only 116 bales of cotton, leaving a balance of eighty-four bales to make up the 200 which the defendants agreed to deliver; and that he had delivered to them 2,000 bunches of yarn, running from Nos. 7 to 10; he (the plaintiff) further stated that he had the stipulated amount of yarn in his factory, but did not deliver more, because he could not get more cotton from the defendants; that he called upon the defendants in Charlotte repeatedly for the balance of the cotton and for a settlement of the whole matter; that defendants refused to deliver any more cotton, saying that they had made a bad trade, had paid cotton enough and that they thought that plaintiff ought to let them off; plaintiff also sent one Durham with the written contract to defendants, to demand a settlement; Durham had no better success than the plaintiff had before had, as Elias, one of the partners to whom he applied, became excited, abused the plaintiff, saying that he (the

plaintiff) had ruined him; and that they owed the plaintiff nothing, but that he owed them, &c.

Here it was proposed by the defendants' counsel, for the purpose of impeaching the veracity of the plaintiff as a witness, to ask him in relation to his bankruptcy, the friendship existing between him (the plaintiff) and his assignee and circumstances suggestive of fraud in relation to his getting possession of this claim against the defendants after the plaintiffs' assignment in bankruptcy. To this the plaintiff objected; but his Honor, overruling the objection, allowed the question to be asked.

In answer the plaintiff stated that when he went into bankruptcy, in 1868, a suit was pending on this claim, and he notified the defendants that it would abate, and they need give it no further attention. Plaintiff further stated that Jenkins, his assignee in bankruptcy, was his intimate friend; he refused to carry on the suit, and sold all the claims under an order of Court. Plaintiff bought this claim for $2.00, and then brought this action. When this claim was sold, plaintiff publicly proclaimed that it called for 84 bales of cotton.

There was no understanding, collusion or arrangement between the assignee and the plaintiff in regard to the sale of this claim. All his claims were sold. Witness demanded payment before bringing this suit.

There was other evidence offered by plaintiff tending to prove same facts, as likewise those stated in the former report of this case, 66 N. C. Rep., 330, and those set out in the opinion of Justice RODMAN at this term, and which it is deemed unnecessary again to state here.

One Cobb, in December, 1875, heard a conversation between plaintiff and Elias, one of the defendants, in which it was agreed that only 116 bales of cotton had been delivered by the defendants, and 2,000 bunches of yarn by the plain-

tiff. In this conversation Elias insisted that to carry out their contract would break him up.

For the defendants, one Nathan testified that at one time the defendants delivered to the plaintiff 25 bales of cotton ; he was book-keeper, charged the cotton and furnished plaintiff with a bill of it. Afterwards, the defendants and another firm, Koopman & Phelps, having a lot of cotton in one of the depots, were directed to remove it. Witness for the defendants superintended the removal and also the division of the same between Koopman & Phelps and the defendants. There were in this lot 179 bales marked to "A. R. H." The defendants first began delivering cotton under the contract with the plaintiff the 20th February, and quit 12th March, 1865, and during that time they delivered 179 bales.

The town authorities and Confederate Quartermaster had the cotton removed from the depot in order to use the building for a hospital.

Other witnesses testified to the delivery at the depot of the 179 bales, marked "A. R. H." This was delivered at the depot at Charlotte.

The question as to the delivery of the cotton and what amounted to a delivery, with all the facts and circumstances connected therewith, was argued and decided in this Court at ——— Term, 187–. See suit between the same parties, 66 N. C. Rep.

The following special instructions were asked for by the plaintiff :

(1.) This is a contract of sale by Elias & Cohen, and of purchase by Homesley. They agree to sell and deliver 200 · bales of cotton in lots as called for, and he agrees in consideration to pay for the cotton in yarn in lots, to be paid in six months.

(2 and 3.) These relate to the delivery, by placing the cotton on the platform, and was decided on the former trial. *Vide supra.*

(4.) If the plaintiff demanded the cotton before the 25th July, 1865, and defendant failed or refused to deliver the whole amount, the plaintiff is entitled to recover as damages the difference in value between the cotton and yarn, from the date of refusal.

(5.) If, when the plaintiff demanded the cotton and at the time of the refusal to deliver, the plaintiff was ready, able and willing to pay for the same in yarn, he must recover, and the measure of damages is the difference in the value at the time of the demand.

(6.) If the plaintiff demanded the balance of the cotton due on the contract, on the 23d July, 1865, and the defendant then refused to deliver any more cotton on the contract, the plaintiff is entitled to recover ; and the measure of damages would be the difference at that time between the value of the cotton undelivered and the value of the yarn undelivered—the plaintiff being able, ready and willing to deliver the yarn due on the contract.

(7.) It is not necessary to a recovery by plaintiff, that the yarn should be hauled to the depot at the time of demand ; but if the plaintiff had his yarn at the factory, eleven miles from the depot, sufficient to enable him to fulfill his part of the contract at the time of demand, it is a sufficient ability.

(8.) If the defendant refused to comply with the demand of the 23d July, 1865, it dispensed with a delivery of the yarn at the depot.

(9.) As to the counter-claim :

Defendants cannot recover unless they show a demand and refusal by the plaintiff.

(10.) They cannot recover unless the plaintiff was indebted to them on the executed part of the contract, and a demand was made.

(11.) If the yarn, upon the contract being executed, or completed by performance of both parties, was worth less than the cotton, the defendants cannot recover.

(12.) If the plaintiff sustained the most damage by the non-performance of the contract, defendants can recover nothing.

His Honor charged the jury : The contract entered into by the parties, contains mutual dependent stipulations, and provides for concurrent acts to be performed by both. To entitle the plaintiff to recover for a breach by the defendants, he must aver and prove, not only a breach on the part of the defendants, but also performance on his part, or a readiness, willingness and ability to perform.

The contract is one of barter—trade—cotton for yarn, and is a Confederate transaction, entered into by the parties during the late war, as is evidenced by its date, 25th January, 1865, and the prices affixed to the articles ; the cotton being rated at $1.50 per pound, and the yarn at $45.00 per bunch. The price of each article was agreed upon and stated for two purposes ; one purpose was, to ascertain the proportion of each article to be delivered in exchange for the other; a second purpose was, to ascertain the damages in case of breach ; and in light of the case of *W. & W. Railroad Co.* v. *King,* recently decided in the Supreme Court of the United States, it may be added, that still a third purpose may be answered, viz : the currency is thereby indicated in which such damages, if any, are to be estimated. This will necessitate the ascertainment of value in the present national currency, of the Confederate currency in use at the date of the contract, such being the well established legislation in North Carolina, in reference to the date.

As to place : According to the contract, the cotton was to be delivered by the defendants, as called for by the plaintiff, at the Charlotte depot of the W., C. & R. Railroad Co. ; and the yarn was to be delivered by the plaintiff, at the Cherryville depot, on the same road, for the defendants.

As to time : The time was the plaintiff's own choosing—any time within six months after 25th January, 1865.

As to quantity: 200 bales, ranging from 300 to 400 pounds each, could be called for by the plaintiff; and he was to furnish in payment thereof, yarn corresponding in value according to the agreed rates. Thus a bunch of yarn at $45, would pay for 30 pounds of cotton at $1.50 per pound.

There seems to have been a very pleasant understanding existing between the parties at first, and neither seems to have stood very firmly upon the strict terms of the contract at the start. Thus the plaintiff, according to his statement, commenced furnishing yarn in February, previous to his making any call for cotton; while the defendants are, according to their letter, asking that yarn may be sent to them by wagon to Charlotte, instead of at the depot at Cherry-ville. However this may be, inasmuch as the plaintiff has appealed to the law, they must be held to the strict terms of the contract, so far as the residue of the contract unfulfilled is concerned, and in respect to which there was no departure by mutual consent.

It is admitted that the plaintiff has furnished to the defendants 2,000 bunches of yarn, at contract prices; this entitles him to 60,000 pounds of cotton.

The claim of the plaintiff, as developed in the progress of the trial, may be embraced under two heads:

(1.) He claims that he has not received 60,000 pounds of cotton, in payment for the yarn furnished by him; but only 116 bales of cotton, at the average weight of 400 pounds, making 46,000 pounds, leaving a balance due of 13,600 pounds of cotton, the value of which he demands with interest.

(2.) He claims that on the 23d July, 1865, he called for the remaining 84 bales, which defendants refused to furnish; and he claims the difference in value between this amount of cotton, undelivered, and the value of the yarn undelivered.

This latter claim, the second, is inadmissible and cannot

be entertained; because, in order to hold the defendants liable on it, it was the duty of the plaintiff to have had the yarn (undelivered) at the depot in Cherryville, as required by the contract, at the time he made the call, or at least before the six months were expired; whereas, he himself states, that he only had the yarn at his factory, eleven miles distant from Cherryville.

In regard to the first claim, (1,) it is a question for the jury to determine, whether only 116 bales were furnished by the defendants. If plaintiff has received more value in cotton than he has given in yarn, at contract prices, he cannot recover in this action. If cotton enough was delivered by the defendants, upon call made by the plaintiff, at the Charlotte depot, or was received by the plaintiff without call, to pay for the 2,000 bunches of yarn, the plaintiff cannot recover any damages.

Sending bunches of yarn, by the plaintiff without call, to the defendants, is an implied call for its equivalent in cotton. If cotton was placed at the Charlotte depot by the defendants, without being called for by plaintiff, it was not a delivery, even if the depot agent received it, unless the plaintiff received it, or assented.

If the jury shall find, that from the evidence, and in accordance with the foregoing principles of law applied thereto, that the plaintiff is entitled to recover the value of 13,600 pounds of cotton, or any less quantity, the damages are to be estimated in Confederate currency at the contract price of $1.50 per pound. Then the value of that currency at the date of the contract, 25th January, 1865, is to be ascertained; for which purpose, the Legislative scale of depreciation of Confederate money *may* be applied, being fifty for one at that date; and the jury should allow interest from 25th July, 1865, the date for the close of the contract, and add in the premium on gold at date of trial, agreed to be 12½ per cent.; so that the judgment may be rendered in national

currency. From the sum, if any, just found due, the defendants would be entitled to a deduction of the price paid by them for hauling the cotton to the depot, as by the contract, that expense was to be paid by the plaintiff.

As to the counter-claim, the defendants are not entitled to recover any judgment against the plaintiff as upon a counter-claim, it being admitted that the plaintiff is a discharged bankrupt.

The plaintiff excepted to the Judge's charge: 1. Because his Honor failed to give the instructions specially asked for. 2. Because his Honor charged, that the plaintiff could not recover for breach of contract on the 23d July, 1865, for the reason he did not prove he had the yarn at Cherryville. 3. For error in the construction of the contract. 4. Error in the instruction, as to the application of the legislative scale and in the matter of interest.

There was a verdict for the plaintiff for $736.25. Rule by plaintiff for a new trial; rule discharged. Judgment in accordance with the verdict, and appeal by plaintiff.

*Battle & Mordecai,* and *Hinsdale,* for appellant.
*Wilson & Son,* contra.

RODMAN, J. The stipulations of the parties to the contract of the 25th of January, 1865, although not concurrent —that is, to be performed at the same time and place— were dependent in the sense that if the defendants refused when called on to deliver cotton, the plaintiff might have rescinded the contract and refused to deliver yarn. But it does not follow that plaintiff, who has not rescinded the contract, is not entitled to have damages by reason of the breach of it by defendants. That defendants have broken their contract is clear, and seems to be admitted. The plaintiff is entitled to some damages, and the only question is by what rule they are to be measured.

We think the Judge below was mistaken in holding that the damages were in any way affected by the fact that the contract was made during the war, and that the prices of the articles to be exchanged were stated in Confederate currency. The prices of the cotton and yarn were fixed on solely as a way of stating how many pounds of cotton should be paid for by one pound of yarn. The rule of damages is the ordinary one where a vendor of goods by executing contract fails to deliver them. It is found that before the 23d of July, 1865, the defendants had received yarn enough to pay for all the 116 bales of cotton, and delivered by them, and for 13,600 pounds more.

The plaintiff is, therefore, entitled to recover:

1. The value of this quantity of cotton, at the place agreed on for delivery, at the time of the refusal, fixed by the witness Durham as 23d July, the value to be estimated in legal tender of the United States. The sum thus found is subject to no deduction except a possible one hereinafter mentioned.

2. The value at the place of delivery on the day stated of such a number of pounds of cotton as would make the 84 bales which were not delivered, this number of 84 bales being the difference between the number delivered (113) and the number agreed to be delivered (200). The value to be estimated as aforesaid, subject, however, to a deduction to be presently stated.

As *bale* as used in this contract is an uncertain quantity, it must be ascertained how many *pounds* the defendants were bound to deliver. The contract says that the 200 bales shall weigh "from 300 to 400 each."

It is settled that when a contract is in the alternative, that is, that the obligor is bound to do one of two things, the option is with him, until a breach, which of the two he shall do, and he may discharge himself by doing either. 2 Chit. Con., 11 American edition, 1061; *McNilt* v. *Clark,* 7

Johns., 465 ; *Smith* v. *Sanborn,* 11 Johns., 59 ; *Choice* v. *Moseley*, 1 Bailey, 136.

In *Small* v. *Quincy,* 4 Greenl., 497, (Maine R.) where the contract was to deliver " from one to three thousand bushels of potatoes," it was held that the obligor might deliver any quantity he chose between those limits.

It is said, however, that *after* breach, the obligee may se- lect the alternative which is the most advantageous to him and claim damages for the non-performance of that. We conceive that rule to apply only to cases in which the promise was to do some act, or to pay a certain sum in money ; or where it was to pay a certain sum on one day, or a larger sum on a subsequent day. In those cases the money, or the larger sum, is regarded as in the nature of stipulated damages. The rule cannot apply to a case like the present, where the defendants, by refusing to deliver any part of the cotton, have exercised their option of refusing to deliver the larger quantity, and elected to be liable for the non-delivery of the smaller quantity. Their obligation is to pay damages for not having done at the due time what they were then bound to do, in order to discharge themselves, and as they could have discharged themselves then by a delivery of the less quantity, they can now discharge themselves by paying damages for the non-delivery of that quantity only.

Taking the obligation of defendants in its legal effect, to be to, deliver bales of 300 pounds, each, they are liable for the non-delivery of 84 bales of 300 pounds—that is, 25,284 pounds. From this must be deducted the 13,600 pounds, the value of which has been already charged against them. When they pay the damages in respect to that quantity, it will be the same thing as if they had delivered it; and if they had done so, it would manifestly have reduced by that much the quantity in arrear. After this deduction, there remains 11,684 pounds, for the value of which defendants are liable, as aforesaid, of the 13,600 pounds.

3. Defendants, however, are entitled to recoup from the above damages the value on 25th July, 1865, at the Cherryville depot, of the quantity of yarn, which, by the terms of the contract, plaintiff was to pay for said 11,684 pounds of cotton, that is to say, 1,947 pounds of yarn. For, of course, the plaintiff cannot recover the cotton, or its value, without paying, by deducting it, the price which he agreed to pay for it. The defendants are also entitled to deduct the cost of hauling 84 bales of cotton from their warehouse to the Charlotte depot. If, after deducting these two items, viz: the value of 1,947 pounds of yarn, and the cost of hauling, from the damages, which the jury may assess in respect to the 11,684 pounds of cotton, any excess shall remain, it will be added to the damages assessed in respect to the 13,600 pounds of cotton. If the value of the yarn shall exceed the damages assessed in respect to the 11,684 pounds of cotton, the excess will be deducted from the damages assessed in respect to the 13,600 pounds of cotton. We think the discharge of the plaintiff, in bankruptcy, will not prevent the defendants from recouping the plaintiff's damages by the amount of damages accruing to them by reason of his nondelivery of the yarn. The debt of the plaintiff is only what remains after such deduction.

Judgment below reversed, and *venire de novo.* Let this opinion be certified. Plaintiff will recover costs in this Court.

PER CURIAM. *Venire de novo.*