## ROBERTS v. BENJAMIN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued December 22, 1887. — Decided January 9, 1888.

In an action at law in a Circuit Court of the United States in New York, an order was made, referring the action to a referee "to determine the issues therein." He filed his report finding facts and conclusions of law, and directing that there be a money judgment for the plaintiff. The defendant applied to the court for a new trial on a "case and

exceptions," in which he excepted to three of the conclusions of law. The court denied the application and directed that judgment be entered "pursuant to the report of the referee," which was done. On a writ of error from this court: *Held,* that the only questions open to review here were, whether there was any error of law in the judgment, on the facts found by the referee; and that, as the case had not been tried by the Circuit Court on a filing of a waiver in writing of a trial by jury, this court could not review any exceptions to the admission or exclusion of evidence, or any exceptions to findings of fact by the referee, or to his refusal to find facts as requested.

The defendant agreed to make for the plaintiff 400 tons of iron, and to ship it about September 1st, or as soon as he could manufacture it, for $19.50 per ton. He did not deliver any of it at or about that date, nor as soon as he had manufactured the required amount. The referee found that the defendant " postponed the execution of the contract from time to time," and that, on November 7th, he insisted, as conditions of delivering the iron, on certain provisions not contained in the original agreement. The plaintiff did not comply with those conditions, and the iron was not delivered. The referee found that the market value of such iron, on November 7th, was $34 per ton, and did not find what the market value of such iron was at any other time. In a suit by the plaintiff against the defendant to recover damages for a breach of the contract, he was allowed $14.50 per ton. On a writ of error: *Held,*

  (1) The postponement of the execution of the contract must be inferred, from the findings, to have been with the assent of the plaintiff;

  (2) The rule of damages applied was proper.

A counterclaim set up by the defendant was, on the facts, properly disallowed.

AT law, in contract. Judgment for plaintiff. Defendants sued out this writ of error. The case is stated in the opinion of the court.

*Mr. James Breck Perkins,* for plaintiffs in error, cited: *Pembroke Iron Co.* v. *Parsons,* 5 Gray, 589 ; *Morris* v. *Levison,* 1 C. P. D. 155 ; *Clark* v. *Baker,* 5 Met. 452 ; *Shepherd* v. *Hampton,* 3 Wheat. 200 ; *Hadley* v. *Baxendale,* 9 Ex. 341 ; *Messmore* v. *New York Shot and Lead Co.,* 40 N. Y. 422 ; *McHose* v. *Fulmer,* 73 Penn. St. 365 ; *Ogle* v. *Vane,* L. R. 3 Q. B. 272 ; *Hill* v. *Smith,* 34 Vt. 535 ; *Hickman* v. *Haynes,* L. R. 10 C. P. 598 ; *Ex parte Llansamlet Tin Plate Co.,* L. R. 16 Eq. 155 ; *Norton* v. *Wales,* 1 Robertson (N. Y. Sup. Ct.) 561 ; *Hewitt* v. *Miller,* 61 Barb. 567 ; *Sleuter* v. *Wallbaum,* 45 Ill. 43 ; *Champion* v. *Joslyn,* 44 N. Y. 653 ;

*Hutchinson* v. *Market Bank of Troy*, 48 Barb. 302 ; *Manhattan Co.* v. *Lydig*, 4 Johns. 377 ; *S. C.* 4 Am. Dec. 280 ; *Philips* v. *Belden*, 2 Edwd. Ch. 1 ; *Donaldson* v. *Farnell*, 93 N. Y. 631 ; *United States* v. *Hodge*, 6 How. 279 ; *Putnam* v. *Hubbell*, 42 N. Y. 106 ; *King* v. *Delaware Ins. Co.*, 6 Cranch, 71 ; *Dows* v. *Exchange Bank*, 91 U. S. 618.

· *Mr. Matthew Hale* (with whom was *Mr. Esek Cowen* on the brief), for defendant in error, cited : *Paine* v. *Central Vermont Railroad*, 118 U. S. 152, 158 ; *Bond* v. *Dustin*, 112 U. S. 604, 606, 607, and cases there cited ; *Boogher* v. *Insurance Co.*, 103 U. S. 90 ; *Tyng* v. *Grinnell*, 92 U. S. 467 ; *Tayloe* v. *Merchants' Insurance Co.*, 9 How. 390, 398 ; *Mactier* v. *Frith*, 6 ' Wend. 103 ; *S. C.* 21 Am. Dec. 262 ; *Miller* v. *Life Insurance Co.*, 12 Wall. 285, 300, 301 ; *Ryan* v. *Carter*, 93 U. S. 78, 81 ; *United States* v. *Dawson*, 101 U. S. 569 ; *Stanley* v. *Albany*, 121 U. S. 535, 547, 548 ; *Ogle* v. *Earl Vane*, L. R. 2 Q. B. 275 ; *S. C.* affirmed, L. R. 3 Q. B. 272 ; *Hill* v. *Smith*, 34 Vt. 535, 547 ; *Newton* v. *Wales*, 3 Robertson (N. Y. Sup. Ct.) 453 ; *Hetherington* v. *Kemp*, 4 Camp. 192 ; *Dana* v. *Kemble*, 19 Pick. 112.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought in the Circuit Court of the United States for the Northern District of New York, by Henry M. Benjamin, a citizen of Wisconsin, against Henry C. Roberts and Archibald S. Clarke, citizens of New York, composing the firm of H. C. Roberts & Co., doing business at Rochester, New York, to recover damages for the alleged failure of the defendants to deliver to the plaintiff a quantity of iron, on a contract for its sale by the former to the latter.

The complainant alleged that at the time of the breach of the contract by the defendants the market value of iron of the kind and quality agreed to be sold was much greater than the contract price of the iron, and that, if the iron had been delivered pursuant to the contract, the plaintiff could have sold it at a large profit.

The defendants, in their answer, besides denying any liability

to the plaintiff, set up by way of counterclaim (1) that the plaintiff was indebted to them in the sum of $796.99, for coal and iron sold and delivered by them to him, and that, as a part of the contract for the sale of the iron upon which the action was brought, it was a condition that the plaintiff should pay to the defendants the $796.99, which he had not done; (2) that, on the sale and delivery to the plaintiff by the defendants of certain coal, the plaintiff had claimed various items of shortage in the coal, for which the defendants had allowed to him $1926.73, that they had afterwards ascertained that the statements of the plaintiff as to the shortage were untrue, and that they were ready to deliver the iron upon the payment to them by the plaintiff of the $1926.73.

The reply of the plaintiff admitted an indebtedness to the defendants of $112.73, on account of the item of $796.99 claimed in the answer, and, in regard to the $1926.73, it alleged that the items of shortage had been allowed and agreed to by the defendants.

After issue was joined, it was stipulated in writing by the parties, that the action be referred to a person named, " as sole referee, to hear, try, and determine the issues therein." Upon this stipulation, an order was entered by the court that the action be referred to such person, " to determine the issues therein."

The referee filed his report as follows:

" I, the undersigned, the referee to whom were referred the issues in the action above entitled, do respectfully report that I have heard the allegations and proofs of the respective parties, and the arguments of counsel thereon, and, after due deliberation, report the following as my findings of facts:

" First. The plaintiff is a citizen of the State of Wisconsin, and resides in the city of Milwaukee, in said State, and the defendants, on and prior to the 17th day of July, 1879, were, have since then continued to be, and now are, citizens of the State of New York, residing at Rochester, in said State, and partners in business in said city, under the firm name of H. C. Roberts & Co.

" Second. On or about the 17th day of July, 1879, the

plaintiff inquired of the said defendants, by telegraph, their lowest price for four hundred tons of number two iron and four hundred tons of number one iron, or one cargo of each, delivered afloat at Milwaukee; to which, on the 22d day of July, 1879, the said defendants replied by telegram, stating the price at nineteen dollars and fifty cents cash, per ton, for number one foundry iron delivered afloat at Milwaukee, and declining to put any price or to make any agreement for the sale of number two iron, and in a letter written on the following day promised and agreed to ship a cargo of the iron about the first day of September, 1879, if the plaintiff should accept the offer.

"On the 25th of July, 1879, the plaintiff, by letter, accepted the offer of a cargo of the iron, at $19.50 per ton afloat at Milwaukee, provided that the plaintiff should be allowed the deduction from the price per ton, if freight could be had for less than one dollar per ton; and also provided that the terms should be, instead of cash, a credit of four months, with interest at the rate of seven per cent per annum after thirty days.

"The defendants, by letter dated July 28th, 1879, accepted the modification of the terms and conditions of sale, and agreed to ship the iron about September 1st, 1879, or as soon as they could manufacture it.

"Third. The term 'cargo,' employed in this correspondence, was understood by the plaintiff and the defendants to mean a cargo of four hundred tons.

"Fourth. The contract for the delivery of the cargo of iron had no relation to or connection with any other dealings between the parties, and the performance thereof by the defendants was not conditioned upon the performance of any act on the part of the plaintiff other than as stated in the preceding findings.

"Fifth. The defendants did not deliver the iron or any part of it to the plaintiff on or about the time specified in their offer, nor did they deliver it as soon as they had manufactured the required amount. They postponed the execution of the contract from time to time, and finally insisted, as a condition of the delivery of the iron, that the plaintiff should pay certain

outstanding indebtedness on other dealings, which the defendants claimed to be due to them from the plaintiff; and also, as a further condition, that payment for the iron should be made upon delivery, that shipment should be by rail instead of by boat, and in instalments of one hundred tons per month, instead of one cargo of the full amount, and that the plaintiff should pay, in addition to the contract price, one dollar per ton for extra freight. The plaintiff did not comply with these conditions, and the iron has never been delivered.

"Sixth. At the time when the letter containing these conditions was sent by the defendants to the plaintiff, November 7th, 1879, the market value of number one foundry iron of the kind manufactured by the defendants was thirty-four dollars per ton afloat in Milwaukee.

"Seventh. From May, 1878, to November, 1878, the defendants delivered to the plaintiff four hundred and thirty-five tons of iron, of the value of seventeen dollars per ton, to be accounted for by the plaintiff to the defendants at that price. The plaintiff has accounted and paid for all of this iron except 6 1979–2240 tons, for which amount payment has not been made, nor has the iron been returned to the defendants. A statement of this account was submitted by the defendants to the plaintiff, showing that there was due and unpaid thereon $117.02, on the 18th day of June, 1879.

"Eighth. Between April 20th, 1876, and October 5th, 1878, the defendants sold and delivered to the plaintiff a quantity of coal, a statement of the weights and prices of which was rendered by the defendants to the plaintiff. Upon receipt of the cargoes at Milwaukee, the coal was weighed at the dock by the plaintiff, and thereafter he submitted to the defendants a statement of the weights and demanded a deduction on account of shortage in weight, which he claimed to exist. The defendants assented to and allowed the claim for shortage, and the plaintiff paid the balance of the account in full. The claim for shortage was made by the plaintiff in good faith, upon the basis of weights taken at his dock, and the defendants did not in any manner object to the plaintiff's claim until after he had insisted upon the performance of the contract upon which this action was brought.

"Ninth. In the months of October and November, 1878, the defendants sold and delivered to the plaintiff coal at certain prices, which, with the interest added to the day of the adjustment of the account, April 16th, 1879, amounted to the sum of twenty thousand three hundred and four dollars and seventy-one cents. Of this amount the plaintiff paid to the defendants sums of money from time to time, which, with interest to the said 16th day of April, 1879, amounted to nineteen thousand six hundred and seventy-eight dollars and ninety-four cents. A statement of said account was made by the defendants to the plaintiff, showing a balance due from the latter to the former on said day, amounting to six hundred and twenty-five dollars and seventy-seven cents. This balance has not, nor has any part of it, been paid by the plaintiff to the defendants.

"Upon these facts I do respectfully report as my conclusions of law:

"First. The plaintiff is entitled to recover from the defendants the difference between the contract price of the four hundred tons of iron which were to be delivered about the first of September, 1879, and the market value of the said iron afloat in Milwaukee, on the 7th day of November, 1879, when the contract was finally broken by the said defendants, amounting to the sum of five thousand eight hundred dollars, with interest from November 7th, 1879, to the date of this report.

"Second. The plaintiff is indebted to the defendants in the sum of one hundred and seventeen dollars and two cents, with interest from June 18, 1879, for the 6 1979–2240 tons of iron as stated in the seventh finding of fact, amounting, at the date of this report, to the sum of one hundred and forty-eight dollars and twenty cents ($148.20), and they are entitled to have the said amount offset against the amount otherwise due from them to the plaintiff, as stated in the first conclusion of law.

"Third. The plaintiff is indebted to the defendants in the sum of six hundred and twenty-five dollars and seventy-seven cents, with interest from April 16th, 1879, for the balance of the account for coal sold to the plaintiff, as stated in the ninth

,finding of facts, amounting, at the date of this report, to the sum of seven hundred and ninety-nine dollars, and they are entitled to have the said amount offset against the amount otherwise due from them to the plaintiff, as stated in the first conclusion of law.

" Fourth. The defendants have not established their right to reopen the account between them and the plaintiff for coal delivered' from April 20th, 1876, and October 5th, 1878, as stated in the eighth finding of facts, and they are therefore concluded by the settlement and adjustment made in that respect, and not entitled to the counterclaim in that behalf stated in their answer herein.

" Fifth. The plaintiff is entitled to judgment against the defendants for the sum of six thousand two hundred and sixty-four dollars and twelve cents ($6264.12), with interest thereon from the date of this report, with the costs of this action, and judgment for that amount is accordingly directed."

The defendants moved the court for a new trial upon a "case and exceptions," made according to the practice in the State of New York, in which they excepted to the first, fourth, and fifth conclusions of law found by the referee, but the motion was denied, and the court thereupon made an order denying it, and directing " that judgment be entered herein pursuant to the report of the referee with costs." Thereupon, judgment was entered for the plaintiff for the $6264.12, and $192.08 interest from the date of the report, and $399.70 costs, amounting in all to $6855.90. The defendants have brought a writ of error to review the judgment.

The item of recovery allowed to the plaintiff by the referee was for 400 tons of iron at $14.50 per ton, being the difference between $19.50, the contract price, and $34, the market value on November 7, 1879.

The only questions open to review here are, whether there was any error of law in the judgment rendered by the Circuit Court upon the facts found by the referee. The judgment having been entered " pursuant to the report of the referee," the facts found by him are conclusive in this court. *Thornton* v. *Carson,* 7 Cranch, 596, 601; *Alexandria Canal* v. *Swann,*

5 How. 83; *York and Cumberland Railroad* v. *Myers*, 18 How. 246; *Heckers* v. *Fowler*, 2 Wall. 123; *Bond* v. *Dustin*, 112 U. S. 604, 606, 607; *Paine* v. *Central Vermont Railroad*, 118 U. S. 152, 158.

The second and third findings of fact show that there was a complete, valid, and binding contract made between the parties, which was not void for uncertainty, or for any other reason. It is expressly found that the term "cargo," employed in the correspondence between the parties by which the contract was entered into, was understood by both of them to mean a cargo of 400 tons. It is also expressly found that the contract for the delivery of the iron had no relation to or connection with any other dealings between the parties, and that the performance thereof by the defendants was not conditioned upon the performance of any act on the part of the plaintiff, other than as stated in the second and third findings of fact.

It is contended by the defendants that the referee erred in taking the $34 per ton, the market value of the iron on November 7, 1879, as the measure of damages, instead of the market price in September, when the iron was to be delivered, and when, it is alleged, the breach of the contract occurred. But, although the defendants did not deliver any of the iron on or about September 1, 1879, nor as soon as they had manufactured the required amount, yet it appears from the findings of fact, considered together, that the breach of the contract did not take place until November 7, 1879. The statement in the findings, that the defendants "postponed the execution of the contract from time to time," and finally insisted upon certain requirements as conditions of the delivery of the iron, must be accepted as a statement that the postponement of the execution of the contract from time to time down to November 7, 1879, was with the assent of the plaintiff. From the fact that, as late as November 7, 1879, the defendants were naming conditions on which they would deliver the iron, it must be inferred that the question of delivery was still regarded by both parties as an open one, and that the mere failure to deliver the iron by the 1st of September, 1879, or

even thereafter as soon as the required amount had been manufactured, was not regarded by either party as a breach of the contract. It was in the power of the defendants, instead of merely postponing the execution of the contract from time to time, to have absolutely refused to perform it, if they found that the price of iron was rising in the market, as is alleged in argument. But it is not found as a fact by the referee that there was any advance in the market value of the iron in question between September 1, 1879, or the time the iron was manufactured, and November 7, 1879, nor is the price of the iron in the market found as a fact, at any other date than November 7, 1879.

On the findings of fact, the rule of damages applied to this case was in accordance with the authorities. Benjamin on Sales, § 872; 2 Sedgwick on Damages, 7th ed., 134, note *b*; *Ogle* v. *Earl Vane*, L. R. 2 Q. B. 275, and in the Exchequer Chamber, L. R. 3 Q. B. 272; *Hickman* v. *Hayes*, L. R. 10 C. P. 598; *Hill* v. *Smith*, 34 Vermont, 535, 547; *Newton* v. *Wales*, 3 Robertson (N. Y. Sup. Ct.) 453.

It is also alleged for error, that the referee erred in refusing to open the account between the parties, and to allow the defendants' counterclaim for $1926.73, as wrongfully charged to them by the plaintiff for shortages on coal. The finding of the referee is, that the plaintiff, after weighing the coal, submitted to the defendants a statement of the weights, and asked a deduction on account of shortage; that the defendants assented to and allowed the claim; that the plaintiff paid the balance of the account in full; that the claim for shortage was made by the plaintiff in good faith, upon the basis of weights taken at his dock; and that the defendants did not in any manner object to the plaintiff's claim until after he had insisted upon the performance of the contract on which this action was brought. On these facts, the referee found, as a conclusion of law, that the defendants had not established their right to reopen the account for the coal in question; that they were concluded by the settlement and adjustment made in that respect; and that they were not entitled to the counterclaim in that behalf stated in their answer.

The answer alleged, in respect to such counterclaim, that the statements of the weight of the coal made by the plaintiff to the defendants were false, and were so known to be by the plaintiff, and that the amount which he had received from the defendants for shortage was obtained from them by his unlawful act. No facts in support of this allegation of the answer are found by the referee, and his conclusion of law was correct.

This case not having been tried by the Circuit Court on the filing of a waiver in writing of a trial by jury, this court cannot on this writ of error review any of the exceptions taken to the admission or exclusion of evidence, or any of the exceptions to the findings of fact by the referee, or to his refusal to find facts as requested. *Bond* v. *Dustin*, 112 U. S. 604, 606, 607; *Paine* v. *Central Vermont Railroad*, 118 U. S. 152, 158.

*The judgment of the Circuit Court is affirmed.*