AMERICAN LUMBER COMPANY v. QUIETT MANUFACTURING COMPANY.

(Filed 28 May, 1913.)

1. Issues Submitted—Sufficiency.

The one issue submitted to the jury in this action for breach of contract for the sale, cutting, and delivery of lumber, to wit, "Are the defendants indebted to the plaintiff, and if so, in what amount?" embraced every issuable fact, and enabled the appellant to present fully its side of the case to the jury, and was sufficient; and it is *Held*, no error to reject numerous issues offered which would have tended to great prolixity.

2. Contracts, Interpretation of—Sale—Security for Advancements.

Where a written contract expresses upon its face that it is a sale of lumber upon certain lands, which the vendee agreed to cut and deliver to the vendor, the latter to make payments in advance thereon, it cannot be construed that the conveyance was merely to secure the advancements agreed to be made.

3. Contracts, Breach of—Sale and Delivery—Lumber—Measure of Damages.

Upon the breach of contract by the vendor for the sale and delivery of lumber, the measure of damages to the vendee is the difference between the price he had contracted for and the market

value at the time and place fixed for delivery, such damages not being remote or speculative, but reasonably within the contemplation of the parties when entering into the agreement.

.APPEAL by plaintiff from *Foushee, J.,* at January Term, 1913, of HAYWOOD.

Civil action to recover damages for the breach of a contract to sell and deliver lumber. Defendant "bargained" with plaintiff to "sell, convey, and deliver to it at Eli and Epps Springs, by the Appalachian Railroad, 500,000 feet of poplar, oak, and basswood lumber" of certain grades stated in the contract, for $2,000 in cash and the advancement of $10 per thousand feet on or before the 15th day of each month for all lumber sawed and put on the sticks the preceding calendar month, the $2,000 to be deducted from the first estimate, and no further advance to be made until the manufacturing company had put on the sticks 200,000 feet to cover the $2,000 advanced, deliveries of the lumber to be made as follows: 150,000 feet to be loaded at Cherokee, N. C., and delivered at Eli, N. C., and the remainder, or 350,000 feet, at Epps Springs, N. C., or Whittier, N. C. The following provisions are in the contract:

"Lumber is to remain on sticks until in shipping-dry condition, and is to be well manufactured, well edged and trimmed, and put up in piles not to exceed 6 feet in width, with at least four feet space between each pile.

"Lumber to be delivered at Epps Springs is to be cut from a tract of timber purchased by the parties of the first part from J. E. Bird, lying on the waters of Cane Brake Branch and Tuckaseigee River, consisting of 580 acres, more or less.

"That which is to be delivered at Eli is to be cut from what is known as the King and Wyatt land, lying on the waters of Couche's Creek, consisting of 168 acres, more or less.

"The said advance of $10 per thousand is to be deducted from settlement made to parties of the first part by party of the second part, from time to time as the lumber is shipped.

"All the above said lumber is to be delivered on or before 1 January, 1912. To be inspected by party of the second part, or one of their representatives, according to the National Hardwood Rules, and if inspected by parties of the first part, they shall guarantee said inspection.

"It is estimated by the parties of the first part that there is now sawn and on sticks 100,000 feet. cut from the King and Wyatt lands, which lumber is in shipping-dry condition, which they agree to begin to deliver at once to Cherokee, North Carolina, and finish sawing and put on sticks the balance of said timber within thirty days.

"The parties of the first part further agree to begin sawing the Bird timber on or before 1 May, and to cut at least 75 per cent of the oak 8-4; that there is now logged about 200,000 feet of said timber."

J. E. Coburn and William Quiett guaranteed the performance of the contract, and are defendants in this action. The court submitted this issue to the jury: "Are the defendants indebted to the plaintiff, and if so, in what amount?" The court charged the jury that if they believed the evidence, their answer to the issue would be $1,995.66, with interest at 6 per cent from 17 April, 1911, "it being the amount of money advanced by the plaintiff, less a credit for the lumber shipped to it." Plaintiff excepted to this charge, and from the judgment appealed, assigning the same as error.

*W. T. Crawford and Alley & Gilmer for plaintiff.*
*Bryson & Black for defendant..*

WALKER, J., after stating the case: Plaintiffs tendered numerous issues, but as the one submitted by the court embraced every issuable fact in the case, and enabled the plaintiff to present fully its side of the case to the jury, it was proper to reject plaintiff's tender and refuse to multiply the issues, which course, if it had been adopted, would have tended to great prolixity, and this should always be avoided. *Black v. Black,* 110 N. C., 398; *Hatcher v. Dabbs,* 133 N. C., 239; *Tuttle v. Tuttle,* 146 N. C., 484.

We were told on the argument that the judge construed the contract to mean that the lumber was not sold to the plaintiff, but was intended to be a mere security for the advancements made by it to the defendant company. This construction is not permissible, as the language of the parties plainly expresses the contrary. It may be the court took the view that while it

was a contract for a sale of the lumber by the defendant, the damages now claimed for its breach are speculative. The plaintiff only seeks to recover the difference between the contract price and the market value of the lumber at the time and place fixed for its delivery, and to this it is clearly entitled. It is the usual rule by which to measure damages in such cases, and such a loss by the plaintiff was surely in the contemplation of the parties at the time they made the contract, as the one which would naturally and probably result from a breach by the defendant. We have held at this term that the correct rule for the assessment of damages, when there has been a breach in failing to deliver the goods bargained for, is the difference between the agreed price and the market value at the time and place of delivery. *Berbarry v. Tombacher, post,* citing many authorities. We were cited by defendant's counsel to *Machine Co. v. Tobacco Co.,* 141 N. C., 284, and *Wilkinson v. Dunbar,* 149 N. C., 20, but those cases in no degree conflict with the general rule now applied to this case. The first of them decides, as the syllabus shows:

"1. Where one violates his contract, he is liable for such damages, including gains prevented as well as losses sustained, as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed.

"2. The law seeks to give full compensation in damages for a breach of contract, and in pursuit of this end it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case, furnishes a standard by which their amount may be determined with sufficient certainty.

"3. In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as part of the compensation."

In the second case, we said: "In an action for damages, the plaintiff must prove, as part of his case, both the amount and

the cause of his loss. Absolute certainty, however, is not required; but both the cause and the amount of the loss must be shown with reasonable certainty. Substantial damages may be recovered, though plaintiff can only give his loss approximately. A difficulty arises, however, where compensation is claimed for prospective losses in the nature of gains prevented; but absolute certainty is not required. Compensation for prospective losses may be recovered when they are such as in the ordinary course of things are reasonably certain to ensue. Reasonable means reasonable probability. Where the losses claimed are contingent, speculative, or merely possible, they cannot be allowed. . . . Profits which would certainly have been realized but for the defendant's fault are recoverable; those which are speculative and contingent, are not. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed. It is not necessary that such damages shall be shown with mathematical accuracy." See Hale on Damages, pp. 70, 71; *Griffin v. Colver,* 16 N. Y., 489; *Masterton v. Mayor,* 7 Hill (N. Y.), 61. This statement of the rule is in substantial accord with *Machine Co. v. Tobacco Co., supra,* and the two cases collect the principal authorities upon the subject. If the damages are certain, and such as must have been reasonably contemplated by the parties, they are recoverable for the breach of the contract of sale, but if purely speculative or fanciful and subject to possible exigencies not likely to be foreseen, they are considered too remote and subtle in their influence to be reached or established by legal proof or judicial investigation, and are, therefore, rejected as an element of compensation. *Masterton v. Mayor, supra.* But the difference between the price and the market value at the time and place of the deliv-

ery fixed by the contract is not speculative, but furnishes a
certain standard by which to estimate the loss in case of a
breach,. and is the one which the very nature of the contract
suggests was contemplated by the parties. "Damages are given
as a compensation, recompense, or satisfaction to the plaintiff
for an injury actually received by him from the defendant, and
should be precisely commensurate with the injury, neither more
nor less. 2 Greenleaf Ev., sec. 253. The amount should be what
he would have received if the defendant had complied with the
contract. *Alden v. Keighly,* 15 M. and W., 117." *Lumber Co.
v. Iron Works,* 130 N. C., 584.

The court erred in not applying the proper rule to the case,
whereby it excluded from the recovery substantial damages, to
which the plaintiff was entitled, if the jury had found the facts
according to his testimony.

New trial.