### N. JACOBI HARDWARE CO., Inc., v. VIETOR et al.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2415.

**1. Sales ⬥32—Contract for sale of rope held completed by correspondence, without regard to signing and return of formal written contract.**

Where selling agents, at buyer's request, quoted price of rope, subject to mills' acceptance, buyer gave definite order for certain amount at such price, and agents wrote, notifying buyer of mills' acceptance before receipt of letter as to price guaranty, which letter of quotation stated would not be given, contract was complete without regard to signing and return of formal written contract by buyer.

**2. Sales ⬥89—Buyer's reference in letter to price guaranty could not affect contract already completed, in absence of assent by seller.**

That buyer, when returning signed formal contract, referred in letter to price guaranty, not contained in order and at variance with contract established by correspondence, could not affect contract in absence of assent by seller.

**3. Sales ⬥22(3)—Buyer, signing and forwarding copy of formal order, waived price guaranty as condition of acceptance of offer.**

Buyer waived price guaranty as condition of acceptance of offer by signing and sending

to selling agents copy of formal order, after being notified that sellers would not guarantee price.

**4. Sales ⬅➡384(2)—Measure of damages for breach of contract by refusal to accept delivery stated.**

Measure of damages for buyer's breach of contract by refusal to accept delivery was difference between contract price and market price on last day fixed for acceptance.

**5. Trial ⬅➡170.**

Where plaintiffs were clearly entitled to recover, and nothing affecting their claim was doubtful, court properly directed verdict for them.

**6. Sales ⬅➡384(7).**

In suit for damages for buyer's breach of contract, price plaintiffs obtained or might have obtained on resale is immaterial.

**7. Sales ⬅➡340—Seller's remedies on buyer's breach of contract stated.**

On buyer's breach of contract, seller may treat property as his own and sue for damages, or treat it as buyer's and sue for price or difference between contract and resale prices.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Wilmington; Isaac M. Meekins, Judge.

Action by Carl Vietor and others, partners trading as Frederick Vietor & Achelis, against the N. Jacobi Hardware Company, Inc. Judgment for plaintiffs, and defendant brings error. Affirmed.

This was an action to recover damages for breach of a contract of purchase. The plaintiff in error occupied the position of defendant in the court below, and the defendants in error the position of plaintiffs, and, for convenience, they will be so designated here. The District Court directed a verdict for plaintiffs on both the question of liability and the amount of damages, and, as the only exceptions of defendant relate to this action of the court, a somewhat detailed statement of the facts established by the evidence becomes necessary:

Plaintiffs were commission merchants, selling agents of mills, and also factors, guaranteeing orders, prices, and accounts. On July 20, 1920, defendant wrote plaintiffs, asking for prices on rope manufactured by the Eagle and Phœnix mills, and stating that jobbers were out soliciting orders for fall shipment, price guaranteed. On July 22d plaintiffs acknowledged receipt of this letter, and promised to quote prices as soon as same were established for the coming season. On July 26th defendant again wrote plaintiffs, asking for prices on the rope, and

again calling attention to the fact that a number of factories were soliciting orders and giving prices with guaranties. On July 29th plaintiffs answered this letter, quoting white 5/16″ to 5/8″ rope at 52½ cents per pound, put up in coils of 33/35 pounds per coil, with freight allowance of 50 cents per 100 pounds, and stating that mills would accept orders up to April 1st of the next year, *but that they would not give a price guaranty.* On August 4th defendant replied to this quotation as follows: "Please book us your quotation July 29th 500 coils Eagle and Phœnix white cotton rope 52½ cents per pound, with freight allowance 50 cents per 100 pounds. Same to be shipped for April 1, 1921." This letter contained no reference to any price guaranty. On August 6th plaintiffs forwarded to defendant formal order, bearing date of August 6th, to be signed by defendant. Duplicate copies of this formal order were sent, one on a pink and the other on a green sheet of paper. Defendant was requested to sign and return the pink copy and to retain the green copy for its own files.

On August 10th, before receiving a reply to the letter of the 6th, plaintiffs again wrote defendant, stating that they had succeeded in having defendant's order accepted by the mills. This letter referred to the order as of the date of August 6th, and stated that it was subject to the conditions on the copy of the order. On August 10th, the same date of plaintiffs' letter last mentioned, defendant signed the green instead of the pink copy of order, and forwarded it to plaintiffs with a letter containing the following statement: "We understand that you guarantee us against any decline you may make on same." To this letter plaintiffs replied, under date of August 12th, acknowledging receipt of the "signed confirmation of order," and stating: "You mention in your letter that you understand we guarantee the price. We beg to state that we have never made a practice of guaranteeing prices on rope and do not do so now." Defendant made no reply to this letter, and did not attempt to revoke or cancel the order. On August 17th plaintiffs wrote defendant, calling attention to the fact that defendant had sent the green instead of the pink copy of the order, and asking that the pink copy be sent to complete plaintiffs' files, and on August 26th defendant signed and returned to plaintiffs the pink copy of the order, without exception or comment.

The foregoing was all of the evidence bearing upon the actual making of the con-

tract, but there was other evidence showing unequivocally that both parties considered the contract as having been made and as mutually binding upon them. On September 13th plaintiffs wrote, asking for specifications, and defendant replied under date of September 28th: "Regarding our order No. 5165, we bought same to be specified for by April 1, 1921. It is our intention to ship same direct to our trade as we receive orders. If this is not satisfactory, we must ask that you *cancel.*" Plaintiffs replied to this, stating that it would be satisfactory for the goods to be ordered out by April 1st. On January 25, 1921, defendant wrote asking plaintiffs to cancel the order, which plaintiffs declined to do. On March 30, 1921, defendant wrote, requesting that plaintiffs use their good offices with the mills to induce them to accept a reasonable compensation in lieu of compliance with the contract. On May 21st defendant again wrote plaintiffs, offering to pay compensation in lieu of taking the rope, and suggesting a payment of 5 to 10 cents per pound.

The evidence is undisputed that on April 1, 1921, the market price of rope of the kind described in the contract was 22½ cents per pound. On that date the Eagle and Phœnix Mills charged plaintiffs for the rope at 52½ cents per pound, and thereafter duly assigned to them their claim against defendant. Plaintiffs paid for the rope the price of 52½ cents and after holding it for a year sold it at 22½ cents. The court directed a verdict in favor of plaintiffs for the sum of $4,950, with interest from May 1, 1921; this being the difference between the contract price and the market price as of April 1, 1921, computed on 500 coils of rope of the minimum weight of 33 pounds per coil.

E. K. Bryan, of Wilmington, N. C. (W. B. Campbell and Bryan & Campbell, all of Wilmington, N. C., on the brief), for plaintiff in error.

I. C. Wright, of Wilmington, N. C. (Chandler Bennitt, of New York City, and Wright & Stevens, of Wilmington, N. C., on the brief), for defendants in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge (after stating the facts as above). [1] We think that the learned District Judge was clearly right in directing a verdict for plaintiffs, both as respects the question of liability of defendant and the amount of damages. As to the first question, defendant had requested an offer from plaintiffs. Plaintiffs, in response to this request, had quoted prices subject to acceptance by the mills. Defendant unconditionally accepted the offer contained in this quotation, giving plaintiffs a definite order for a certain amount of rope at a definite price, specifying freight allowance and time of shipment. This completed the contract, subject to the condition that it be accepted by the mills. It was accepted by the mills, and plaintiffs wrote, notifying defendant of the acceptance, prior to their receipt of the letter, in which defendant stated that its understanding was that the prices were guaranteed, an understanding directly in conflict with the express terms of the letter of quotation. This correspondence completed the contract between the parties, without regard to the signing and return of the formal written contract. Bell v. Lamborn (C. C. A. 4th Ct.) 2 F.(2d) 205; Billings v. Wilby, 96 S. E. 50, 175 N. C. 571; Wilkins v. Cotton Mills, 97 S. E. 151, 176 N. C. 72; Savannah Sugar Refining Corporation v. Sanders, 129 S. E. 607, 190 N. C. 203.

[2] The fact that the defendant, when returning the signed formal contract, referred in its letter to an understanding on its part as to price guaranty not contained in the order as signed, and at variance with the terms of the contract as established by correspondence, cannot avail the defendant. This was not an attempt to specify different terms in the acceptance of an offer, which would amount to a rejection of the offer and a counter proposition. The offer had already been unconditionally accepted, and the terms of the contract had become fixed. It amounted at the most to a proposed alteration of the contract, made after unconditional acceptance, which could not affect the contract, in the absence of assent by the other party. Wilkins v. Cotton Mills, supra; 6 R. C. L. 605; Turner v. McCormick, 49 S. E. 28, 56 W. Va. 161, 67 L. R. A. 853, 107 Am. St. Rep. 904.

As said by Justice Stacy in Rucker v. Sanders, 109 S. E. 857, 182 N. C. 607: "In order for this subsequently intended direction or suggestion to invalidate the acceptance, it should amount to a qualification or condition imposed as a part of the acceptance itself."

[3] The statement in the letter as to price guaranty could not operate as a rejection of the offer, because the offer had already been accepted, and for the further reason that it did not purport to be a condition of acceptance. It could not operate to add an additional term to the contract, because plain-

tiffs promptly replied, refusing to guarantee the price. But, even if the language of defendant's letter could be construed as imposing a price guaranty as a condition of acceptance, the defendant waived this condition by signing and sending in the pink copy of the formal order, after it had been notified that plaintiffs would not guarantee the price. The subsequent correspondence of the parties with regard to the contract shows clearly that they both thoroughly understood that there was a completed contract, and that there had been no guaranty as to price. [4, 5] As to the amount of damages, it was clear from all the evidence in the case what plaintiffs were entitled to recover, there being no dispute as to any element to be considered. The contract price was admittedly 52½ cents per pound. The evidence showed without contradiction that the market price was 22½ cents per pound on April 1, 1921, the last day fixed for acceptance of delivery by the defendant. The jury were instructed to fix the damages at an amount which represented the difference between the admitted contract price and this undisputed market price, calculated on the quantity of rope covered by the contract. This was the correct measure of damages. Lumber Co. v. Mfg. Co., 78 S. E. 284, 162 N. C. 395; Duluth Furnace Co. v. Iron Belt Mining Co. (C. C. A. 8th Ct.) 117 F. 138, 55 C. C. A. 154, 35 Cyc. 592, and cases cited; 24 R. C. L. 116. Where the plaintiffs were clearly entitled to recover, and no matter affecting their claim was left in doubt, the court properly directed a verdict in their favor. North Penn. R. R. v. Commercial Bank, 8 S. Ct. 266, 123 U. S. 727, 31 L. Ed. 287; Angelo v. Lamborn (C. C. A. 4th Ct.) 2 F.(2d) 854. [6] Defendant contends that there was error in the instruction as to damages, because there was some evidence that rope sold as high as 25 and 30 cents per pound between April 1, 1921, and the time of the resale of the rope by plaintiff on June 14, 1922. This contention of defendant arises from a misconception of plaintiffs' action, which is an action for damages for breach of contract, and not an action to recover the difference between the contract price and the price obtained on resale.

[7] In the case of a buyer's breach of a contract for the sale and purchase of goods the seller has an election of three remedies: (1) To treat the property as his own and sue for damages; (2) as the property of the buyer and sue for the price; (3) as the property of the buyer, and to resell it for him, and sue for the difference between the

contract price and that obtained on resale. Heiser v. Mears, 27 S. E. 117, 120 N. C. 443; 24 R. C. L. 86. In the case at bar the sellers elected to pursue the first of the remedies mentioned, and all questions as to what price they obtained, or might have obtained upon a resale of the property, are foreign to the issue in controversy which, as stated above, was the difference between the contract price and the market price at the time fixed for delivery. As the facts as to this were established beyond controversy, a verdict was properly directed.

Affirmed.