### J. FRANK McCALL v. GLOUCESTER LUMBER COMPANY AND JOSEPH S. SILVERSTEEN.

(Filed 13 February, 1929.)

**1. Appeal and Error—Record—Questions Presented for Review.**

In the Supreme Court the appellant is confined to the theory upon which he tried his case in the court below.

**2. Damages—Measure of Damages—Breach of Contract.**

Where the seller contracts to deliver lumber for an indefinite time at a certain price at the place of delivery, upon the purchaser's breach of his contract to receive and pay for it, the seller may recover the difference between the contract price and the fair market value of the lumber at the place of delivery, taking the fair market value at the time of the breach and not at the date the future deliveries would have been made, and an instruction that he could recover the difference between the market price and the value of the lumber undelivered, without deducting the cost of delivery, is erroneous.

**3. Trial—Instructions—Requests—Appeal and Error.**

An erroneous instruction on the issue of the measure of damages entitled the party prejudiced thereby to a new trial without the necessity of his having submitted a prayer for instructions thereon.

APPEAL by defendant, Gloucester Lumber Company, from *MacRae, Special Judge,* and a jury, at March Term, 1928, of TRANSYLVANIA. New trial.

The plaintiff instituted this action to recover damages for the breach of an alleged contract made and entered into by him with the Gloucester Lumber Company, a corporation, and Joseph S. Silversteen, on 1 August, 1916. There was a judgment of nonsuit in the court below as to the defendant Silversteen. The alleged contract contains certain recitals: Whereas (1) said Gloucester Lumber Company is desirous of obtaining the right to construct and operate a line of its railroad over and about one-fourth mile of the said J. Frank McCall's land in Gloucester Township, known as the J. G. McCall Place. (2) The said J. Frank McCall is desirous of selling to the said Gloucester Lumber Company certain saw timber, acid wood and tan bark growing *on his land* on and near the railroad of said Gloucester Lumber Company. (3) The said parties "for and in consideration of the sum of one dollar each to the other in hand paid, the receipt of which is hereby acknowledged, and upon the stipulations, agreements and conditions hereinafter set out, have entered into this contract upon the following conditions, which is to say:

Section 1. The said J. Frank McCall agrees that the Gloucester Lumber Company shall have the right to build its line of logging railroad over about one-fourth mile of his land in Gloucester Township on the waters of North Fork, known as the J. G. McCall Place, upon the following conditions being complied with by the Gloucester Lumber Company.

Section 2. The Gloucester Lumber Company agrees and binds itself and its assigns *to purchase from the said J. Frank McCall all of the merchantable saw timber which he may deliver—by the railroad and the said Gloucester Lumber Company* at ............, to be agreed upon between the parties hereto—and to pay for the same within thirty days after the same is scaled, with no right or privilege on the part of the Gloucester Lumber Company to retain any part of the purchase price as "hold back."

If there is any dissatisfaction with the scaling by the company, then J. Frank McCall to have a representative present to assist in the scaling. Other provisions:

(A) (1) "The Gloucester Lumber Company further agrees *to purchase all the acid wood which the said J. Frank McCall may deliver on cars of the Gloucester Lumber Company* at a price of $4 per cord of 168 cubic feet (said cars to be placed on the track of the Gloucester Lumber Company at such place or places as the said J. Frank McCall may designate). (2) And if the market price of the said wood advances, then the said J. Frank McCall shall receive the benefit of such advance, and in no case shall the said J. Frank McCall receive less than $3.75 per cord for said acid wood, and in no case shall the Gloucester Lumber Company receive more than $1 per cord as freight charges.

(B) "It is further agreed that the Gloucester Lumber Company shall pay to the said J. Frank McCall $8 per ton of 2,240 pounds (1) *for all tan bark delivered on cars of the Gloucester Lumber Company* (such cars to be placed at such points along the said company's railroad as the said J. Frank McCall may designate, (2) and if the market price of said tan bark advances then the said J. Frank McCall shall receive the benefit of such advance; and the Gloucester Lumber Company shall pay for the said tan bark once each month, and shall have no right or authority to withhold any part of the purchase price of said tan bark; it is further understood and agreed that the Gloucester Lumber Company shall scale, measure and take up the saw logs, and acid wood and tan bark at least once each month, and pay for the same monthly with no right or authority to 'hold back' any money due thereon as the purchase price of the same; *and the Gloucester Lumber Company stipulates and agrees to take all the aforesaid wood products at the prices therein named which the said J. Frank McCall shall deliver as hereinbefore set out and specified.*

(3) This contract signed in duplicate and consisting of two sheets, and each party furnished with his copy, which copy for the purposes of this contract are held and considered by the parties hereto as the original. This contract shall continue to be in force until abrogated or modified by written agreement between the parties signatory thereto. This the 1st day of August, 1916.

(Signed)   GLOUCESTER LUMBER COMPANY.

By ............................., President.

.......................................... (Seal)."

The defendant, Gloucester Lumber Company, denied making the contract and sets up the defense of (1) *res judicata*, (2) contractors' agreement between J. Frank McCall and Gloucester Lumber Company, dated 6 April, 1915, whereby J. Frank McCall agrees to cut and deliver on board cars certain lumber on a certain boundary of timber "known as Bruce Knob Branch." The Gloucester Lumber Company alleges a breach by J. Frank McCall and sets up a counterclaim for damages.

The plaintiff alleges that under the contract of 1 August, 1916, it delivered "logs, cord wood, tan bark and other merchantable timber and products at points along the railway of the said Gloucester Lumber Company, and the defendants received, accepted and in the main paid for said logs, cord wood, tan bark and other merchantable timber so delivered until about the latter part of the year 1923, when the defendants and each of them breached their said contract with the plaintiff, and then and thereafter wrongfully and wilfully refused to receive, accept, ship, transport or pay for any of said logs, cord wood, tan bark and merchantable timber or other products of the plaintiff, and then and

since said time have refused to carry out said contract to the great damage of the plaintiff. . . . When the said defendants refused to carry out said contract with the plaintiff it rendered the plaintiff's merchantable timber, as above referred to, valueless and worthless because of the remoteness of said timber from a shipping point; and that the defendants, since said breach of contract, and recently, have torn up their said railway, discontinuing same and removing the rails therefrom, leaving this plaintiff's timber unmarketed and of practically no value whatever."

It was in evidence, on the part of the plaintiff, that the railroad was built in 1916 across the land.

"Q. Had you completed taking out your property as mentioned in this contract, cross-ties, bark, acid wood and saw timber at the time they took up the railroad, moved it away from there? A. No, sir, had put in half of it. The railroad was taken away before my timber was removed, without my consent. This suit was brought before it was taken away. I didn't consent to it. I couldn't help myself. Quite a bit of it was already there and they refused to take it.

"Q. Did they, prior to taking the railroad away, signify whether they would or would not haul your material? A. They had forbidden me putting it on the railroad. About two years before they moved the railroad they refused to receive my products there, 1923 and 1925, my recollection."

The half undelivered, as alleged by plaintiff, was mostly stumpage or standing timber uncut, about 300,000 feet of saw timber, acid wood and tan bark.

The court below ruled out the evidence in regard to cross-ties as not included in the contract. The issues submitted to the jury and their answers thereto, were as follows:

"1. Is the defendant indebted to the plaintiff, as alleged in the complaint, and if so, in what amount? Answer: Yes, $9,500.

"2. Is the plaintiff indebted to the defendant, as alleged in the defendant's counterclaim, and if so, in what amount? Answer: No—none."

*Ralph Fisher, T. B. Galloway and Bourne, Parker & Jones for plaintiff.*

*T. Colender Galloway, W. E. Breese and Merrimon, Adams & Adams for defendant, Gloucester Lumber Company.*

CLARKSON, J. The record discloses many interesting questions that we need not now consider.

"A party is not permitted to try his case in the Superior Court on one theory and then ask the Supreme Court to hear it on another and

different theory. *Warren v. Susman,* 168 N. C., 457." *Shipp v. Stage Lines,* 192 N. C., at p. 478; *In re Will of Efird,* 195 N. C., at p. 84.

The theory upon which the court below tried the case: The evidence of plaintiff tended to establish the contract as alleged by him. The probative force of the evidence was for the jury and they found the contract was as contended for by the plaintiff. We come to consider the contract: (a) "The Gloucester Lumber Company agrees and binds itself and its assigns to purchase from the said J. Frank McCall all of the merchantable saw timber which he may deliver—by the railroad of the said Gloucester Lumber Company at—to be agreed upon between the parties hereto—and to pay for the same within thirty days after the same is scaled, with no right or privilege on the part of the Gloucester Lumber Company to retain any part of the purchase price as 'hold back.' (b) The Gloucester Lumber Company further agrees to purchase all the acid wood which the said J. Frank McCall may deliver on cars of the Gloucester Lumber Company at a price of $4 per cord of 168 cubic feet (said cars to be placed on the track of the Gloucester Lumber Company at such place or places as the said J. Frank McCall may designate. And if the market price of the said wood advances, then the said J. Frank McCall shall receive the benefit of such advance, and in no case shall the said J. Frank McCall receive less than $3.75 per cord for said acid wood, and in no case shall the Gloucester Lumber Company receive more than $1 per cord as freight charges. (c) It is further agreed that the Gloucester Lumber Company shall pay to the said J. Frank McCall $8 per ton of 2,240 pounds for all tan bark delivered on cars of the Gloucester Lumber Company (such cars to be placed at such points along the said company's railroad as the said J. Frank McCall may designate), and if the market price of the said tan bark advances, then the said J. Frank McCall shall receive the benefit of such advance," etc.

From a just construction of the contract, all the wood product had to be hauled and delivered at the railroad. The reasonable cost to cut, haul and deliver this from the stumpage was a material item. The court below charged the jury, to which exception and assignment of error was made, as follows: "The court charges you that if you find by the greater weight of the evidence that the plaintiff and defendant entered into the contract as alleged in the complaint, and if you find that J. F. McCall was the owner of the wood products on the J. G. McCall tract, in Dave's Cove and on Indian Creek, or had the right to contract for the sale and delivery of the same, and that he granted a right of way over the same; that in compliance with the terms of said contract he did grant a right of way over the said land; that in consideration for the granting of said right of way the defendant agreed to

purchase from the plaintiff the saw timber, acid wood and tan bark on said land, and that the defendant breached the contract by refusing to accept and pay for said wood products, *then the plaintiff would be entitled to recover of the defendant the difference in the value of said wood products before and after said breach.* If you find that the plaintiff and defendant did not enter into the contract, as alleged, or that the plaintiff did not grant to the defendant the right of way, as alleged, then you should find that the plaintiff is entitled to recover nothing." In the charge we think there was error.

In *Construction Co. v. Wright,* 189 N. C., at p. 460, this Court, speaking to the subject, said: "The plaintiff challenged the right of the defendant to present this question in an exception to the charge, because the defendant did not ask, in writing, for any special instructions on this question. It appears to us not to be necessary, in the instant case, in order to present this question, that a written request should have been made. The true rule appears in *Strunks v. Payne,* 184 N. C., 582. Whenever the trial court attempts to state the rule of law applicable to the case, he should state it fully and not omit any essential part of it. The omission of any material part is, necessarily, error of an affirmative or positive kind. Therefore, it may be taken advantage of on appeal, by an exception to the charge, without a special request for the omitted instruction."

In *Bank v. Rochamora,* 193 N. C., at p. 8, quoting numerous authorities, the law is thus stated: "Where the instruction is proper so far as it goes, a party desiring a more specific instruction must request it." This applies to subordinate elaboration, but not substantive, material and essential features of the charge. C. S., 564.

The vice in the present case is that the instruction is not proper so far as it goes. The learned and careful judge trying a long and complicated case as the present, inadvertently laid down an erroneous rule to guide the jury as to the measure of damages under the contract in this case.

In *Hunter v. Gerson,* 178 N. C., at p. 486, bearing on the subject, it is said: "The rule for assessment of damages in a case like this is well settled, and it is the difference between the contract price of the rails and their fair market value at the time and place fixed by the contract for their delivery. *Lumber Co. v. Furniture Co.,* 167 N. C., 565; *Lumber Co. v. Mfg. Co.,* 162 N. C., 395; *Berbarry v. Tombacher,* 162 N. C., 497. In the first case cited above the Court says: 'The court gave correct instructions as to the rule for admeasuring damages, it being the difference between the contract price and the market price at the place and time appointed by the contract for the delivery. This is the standard of adjustment, as between the parties where there has been

a breach, or failure to deliver, from a very ancient period, and is, we believe, universally adopted as being in reality the only one for our safe guidance, and a very just one, too.' "

We extract (quoting from *Masterton v. The Mayor,* etc., 7 Hill, at p. 71) the following from *Hawk v. Lumber Co.,* 149 N. C., at p. 14: "The language of *Nelson, C. J.* (afterwards a Justice of the Supreme Court of the United States), is especially applicable to our case. He says: 'Where the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on that day of the breach is to govern in the assessment of damages. In other words, the damages are to be settled and ascertained according to the existing state of the market at the time the cause of action arose, and not at the time fixed for full performance. The basis upon which to estimate the damages, therefore, is just as fixed and easily ascertained in cases like the present, as in actions predicated upon a failure to perform at the day.' "

The contract fixed no time for performance or price as to the merchantable saw timber and the price of the acid wood and tan bark was subject, under the contract, to *fluctuation.* The standard of adjustment is the fair market value at the time of the breach. The railroad was fixed in the contract as the place of delivery. The measure of damages is the difference between the fair market value for the wood product delivered according to the terms of the contract and the fair market value of the property in its then condition at the time of the breach.

Briefly, market value or price means the fair value as between one who desires, but is not compelled to buy and one who is willing but not compelled to sell.

This error was material and prejudicial under the facts and circumstances of this case. For the reasons given there must be a

New trial.