**SULT v. LEONARD.**

**Civ. A. No. 1174.**

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 5, 1954.

Emanuel Gersten, Hillside, N. J., for plaintiff.

George D. Hovey, Hickory, N. C., for defendant.

WARLICK, District Judge.

This is a simple sort of action. It has to do with the sale by the defendant to the plaintiff of certain sheet steel. Plaintiff seeks a recovery of the defendant for damages sustained in the alleged breach of a certain contract entered into between the parties hereto. The defendant interposes a general denial,—alleges substantial compliance and claims delivery as stipulated and asks no recovery.

The plaintiff, a resident of Rahway in the State of New Jersey, has his place of business at 32 West Street in said city, and is engaged in the business of shaping metals and on occasion purchases steel which he finishes by rounding its edges, and sells to the trade.

The defendant is engaged in various lines of business and among them the buying and selling of steel under the trade name of Piedmont Steel Company at Hickory, in Catawba County, in the Western District of North Carolina.

Jurisdiction of this action is alleged under diversity of citizenship and the amount in controversy. Title 28 U.S.C. A. § 1332.

On a date prior to November 15, 1950, plaintiff contacted one Charles Greely, a general agent representing the defendant, located at that time in and around Baltimore and New York, on learning that the defendant had certain articles of steel for sale, and on November 16, 1950, plaintiff entered into certain negotiations with the defendant through said Greely for the purchase of a certain amount of steel, by submitting to the defendant an order for the following materials:

"L. W. Sult
Round Edging of Metals our Specialty
32 West Street
Rahway, New Jersey

Rahway 7–5635

November 16, 1950

To: Piedmont Steel Company
Box 440
Hickory, North Carolina

Attention: Mr. Greely
Cold Rolled Sheet Steel

50 ton 20–22–26 Ga. X Rdm. Lgths in Coils approx. 300 lbs. each @ $9.50 GNo. F. O. B. Baltimore, Maryland

Check covering ninety-five hundred ($9500.00) dollars, certified, is enclosed.

It is understood that shipment will be made on the above amount immediately via motor truck freight collect.

The balance of 200 ton of Sheet Steel which you now have in stock will be purchased·immediately upon delivery of the first 50 ton.

(s) L. W. Sult
L. W. Sult"

and on same date received from the defendant the following bill of sale:

"Piedmont
Steel Company
Hickory, N. C.

|  | Via | Terms: |
|  | M.T. | Cash (check) |

Sold To:
*L. W. Sult
32 West St.
Rahway, N. J.

Shipped To:

Same.

| Description: | Unit | Extension |
|---|---|---|
| Cold Rolled Sheet steel— | | |
| 50 Ton 20 22 26 Ga. x rdm | | |
| Lgth Coil Approx. 300 lbs. each | 9.50 cwt | $9,500.00 |

Paid by checks No. 181 731869

(s) C. M. Greeley
11/16/50"

Prior to closing the transaction since the purchase price was being paid prior to inspection or delivery, the plaintiff called the defendant Leonard on long distance telephone at his office in Hickory, North Carolina, and received from him a direct assurance that the transaction would be validated and delivery would be made and that the payment of check therefor to Mr. Greely would be in keeping with the transaction and was authorized by the defendant Leonard.

■ The purchase and sale and the receipt of the money took place in New

York City and the contract therefore is to be determined under the laws of the State of New York.

The steel was originally purchased by the defendant from the Commercial Surplus Sales Company, Baltimore, Maryland, and was located in its warehouse in that city at the time of the sale thereof, to the plaintiff by the defendant herein. It had been sold to the defendant as "various sizes and gauges with no guarantee as to condition or size", and was shipped directly from its place of storage with the Commercial Surplus Sales Company to the plaintiff at the direction of the defendant.

The first shipment was made on November 22 and on arrival was found not to comply with the terms of the contract. The gauge thereof being entirely too light (too thin) for the purposes intended by the plaintiff,—no part of the shipment being within the 20–22 and 26 gauge as contracted for by the plaintiff. Immediately upon arrival and upon payment of transportation charges, plaintiff contacted Greely, defendant's general agent, and was informed that a mistake apparently had been made and that an investigation would be had and the matter straightened out. That in line with directions given by Greely, plaintiff unloaded the metal and stored it in his warehouse.

Sometime about the middle of December the second shipment was made under the terms of the contract and this too failed in every way to comply with the conditions thereof. Plaintiff being unable to contact Greely, accepted the shipment under protest, paid the transportation charges and stored it in his warehouse. The gauges were wholly out of proportion to those ordered, being entirely too thin for the purposes sought. Subsequently, Greely, on being contacted, informed plaintiff that he would pick up the two loads and later deliver the proper material, as purchased and paid for. This was not done. Sometime during the latter part of December 1950 the final or third shipment was brought to plaintiff's place of business in New Jersey by the common carrier and plaintiff absolutely refused to accept the shipment. Whereupon an effort was made by the defendant through his general agent, Greely, to dispose of the articles, but that nothing came of the transaction to the extent that the plaintiff was in any wise benefitted.

Plaintiff paid a total of $690.25 for transportation charges on the deliveries to him. Over quite a period of time plaintiff undertook to get something worked out with the defendant but in turn received little, if anything, save promises, and finally after approximately a year and after due notice to defendant, plaintiff sold certain of the steel delivered to him by the defendant for scrap value, receiving from the sales thereof a total amount of $1,052.25, which resulted in plaintiff being actually out of pocket $9,138, and having nothing of value therefor to show for this expenditure. No part of this has been repaid to the plaintiff by the defendant.

The defendant undertook to prove that the steel shipped complied in every way with that sold to the plaintiff—that sizes mattered little, and that the contract was only explanatory and the stated sizes were understood as being only directory, and that full compliance with the contract had been made. With this line of evidence I am not impressed, for I look upon the contract as being what the parties had in mind when they settled their status thereunder.

It thus appears that the plaintiff is entitled to have and recover of the defendant the sum of $9,138 and interest thereon at 6% for money paid for the articles purchased under his contract with the defendant and which were not delivered. This sum is arrived at by adding to the $9,500 originally paid in full of the contract the sum of $690.25, which represented transportation charges paid, and deducting therefrom $1,052.25, the amount received from the sale of the steel for scrap shipped to the plaintiff and which

was not in compliance with the contract.

■ The plaintiff, in offering certain evidence, insisted that he was entitled to recover for profits he would have made by the transaction when his work therein had been completed, but this evidence is not entertained by the court as it is largely conjectural and speculative, and one would not want to enter upon this uninviting subject unless a definite and positive showing was made from which the proper findings could be had. In addition there is no evidence that would have placed the defendant on notice that in the event of failure to comply with the terms of the contract, that speculative profits would be considered. Coal Co. v. Ashville Ice & Coal Co., 134 N.C. 574, 47 S.E. 116; Machine Company v. Wells Whitehead Tobacco Co., 141 N.C. 284, 53 S.E. 885, 8 L.R.A.,N.S., 255; American Lumber Co. v. Quiett Mfg. Co., 162 N.C. 395, 78 S.E. 284; American Lumber Co. v. Drexel Furniture Co., 167 N.C. 565, 566, 83 S.E. 801.

■ The proper rule for admeasuring the damage is the difference between the contract price and the market price at the place and time appointed by the contract for delivery. This is the standard of adjustment, as between the parties, where there has been a breach, or failure to deliver, from a very ancient period, and is, we believe, universally adopted as being in reality the only one for our safe guidance, and a very just one, too. Berbarry v. Tombacher, 162 N.C. 497, 77 S.E. 412; American Lumber Co. v. Quiett Mfg. Co., 162 N. C. 395, 78 S.E. 284; Roberts v. Benjamin, 124 U.S. 64, 8 S.Ct. 393, 31 L. Ed. 334; Coal Co. v. Ashville Ice & Coal Co., supra; Homesley v. Elias & Cohen, 75 N.C. 564; Oldham v. Kerchner, 79 N.C. 106, and other cases cited in the Berbarry case, supra. Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L.Ed. 71; Douglass & Mandeville v. McCallister, 3 Cranch 298, 2 L.Ed. 445; Roberts v. Benjamin, 124 U.S. 64, 8

S.Ct. 393, 31 L.Ed. 334; Shepherd v. Hampton, 3 Wheat. 200, 4 L.Ed. 369.

The evidence discloses and I find therefrom that plaintiff is entitled to recover the sum of $750 as an additional amount,—this being the amount between the contract price of the steel sold him and the market value thereof at such time and place of sale.

I conclude therefore that plaintiff should have and recover judgment against the defendant, Henry S. Leonard, in the sum of $9,888 and interest thereon from November 16, 1950, at 6%, together with costs of the action.

Counsel will submit judgment.