[Civ. No. 3829. First Appellate District, Division Two.—July 26, 1921.]

C. D. OLDERSHAW, Respondent, v. KINGSBAKER BROTHERS COMPANY (a Corporation), Appellant.

[1] CONTRACT—PURCHASE OF TOMATOES—MUTUALITY OF OBLIGATION.— A contract to purchase the entire output of a tomato plant for a given period is not void for want of mutuality.

[2] ID.—BREACH OF CONTRACT—DAMAGES—EVIDENCE.—Where in an action for damages for breach of a contract to purchase a tomato crop there is evidence which would have supported a larger award of damages for the portion of the crop not taken, the defendant is in no position to complain of the amount of the award.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ingle Carpenter and M. J. Finkenstein for Appellant.

Kaye & Siemon for Respondent.

NOURSE, J.—Plaintiff recovered judgment against defendant for $3,754.55 damages for breach of contract to purchase the entire crop of hothouse tomatoes grown by plaintiff in his plant at Bakersfield during the winter of 1917–18. The contract is found in a series of letters passing between the parties following the sale by plaintiff of a large amount of tomatoes during the previous winter

on a basis of fifteen cents a pound. While these deliveries were being made, the plaintiff, on February 7, 1917, wrote to defendant that he was contemplating the construction of two new hothouses in order to increase his output for the 1917–18 season and asked if defendant would be able to take the increased supply. To this defendant replied: "We will have no trouble in disposing of fifty lugs or more every day, and mention this to assure you that we have the distribution for the full capacity you will be able to turn out." On March 10th, following, defendant wrote to plaintiff that it preferred to have deliveries begin close after the first of December; that the most desirable period for hothouse tomatoes was in December, January, and February, and advised him to plant his seed so that the tomatoes would mature for shipment during that period. On April 2d, following, the plaintiff wrote defendant that he would construct four instead of two new hothouses and hoped to be able to give defendant plenty of tomatoes during the next season. Also, that "I will plant my seed in time to have ripe tomatoes for you on December 1." On April 7th defendant replied, "We will look forward to receiving all your tomatoes next year, and trust that your contemplated plans will materialize."

From this correspondence it is apparent that the parties intended the plaintiff should increase his production adding four new hothouses, and that the defendant would purchase the entire output on the basis of the transactions of the previous winter—that plaintiff should ship the tomatoes, when ready, to the defendant in Los Angeles, and that the defendant should receive them—up to fifty lugs a day at least—paying therefor fifteen cents a pound on semi-monthly statements.

Relying upon this agreement plaintiff made the contemplated improvements, and on October 14, 1917, wrote the defendant that he had about three times the acreage in tomatoes over the last season and that the crop looked like a big yield. He also stated that some of the tomatoes would be ready for shipment about November 15th, but that the main crop would come in about December 15th. Not having received any reply to this letter, plaintiff again wrote to defendant on October 25th, and in reply to this defendant stated: "Wish to say that we have anticipated and still

expect to handle your entire crop of tomatoes this coming season.'' At that time defendant also notified plaintiff that it would be able to handle his tomatoes when the crop started about the middle of November.

On November 6th defendant's agent called on plaintiff to look over the crop and expressed himself as well pleased at the prospect of a large yield. This call was made in answer to plaintiff's written request that defendant send someone from the firm for that purpose. During the conversation plaintiff notified the agent that owing to the advanced cost of fertilizer he would have to charge sixteen cents that season instead of fifteen. To this the agent agreed and some tomatoes were shipped and billed to defendant on that basis.

Soon thereafter the agent informed plaintiff that his firm was unable to sell the tomatoes at a profit if billed at sixteen cents and asked that he sell at the market price. Plaintiff informed the agent that he would write the defendant and, on November 21st, did write offering to reduce the price to ten cents a pound for all shipments prior to December 1st. This was accepted by defendant in a letter of November 24th, in which defendant stated that it had no trouble in disposing of plaintiff's tomatoes, but that on account of local weather conditions there were so many field-grown tomatoes on the market that plaintiff's tomatoes were being sold at a loss. ''We are perfectly willing to lose a little on these first shipments and appreciate your attitude in *reducing* the price to ten cents per pound on certain mentioned shipments up to December 1.'' Shipments were continued throughout the month of November, billed at ten cents a pound, and from December 1st to December 30th, billed at sixteen cents. No objection was made by defendant except that its agent requested plaintiff to make a further extension of the reduction in price, which was not agreed to. On December 29th, the market for hothouse tomatoes still being poor because the warm southern California weather, which was not anticipated, was still producing field-grown tomatoes, defendant wired plaintiff asking his permission to sell his tomatoes to best advantage on the market. When plaintiff replied that he would insist upon fulfillment of his contract defendant, on December 30th, refused to accept further shipments. Plaintiff then endeavored to sell the

remainder of his crop in other markets. The proceeds of such sales as were made were taken into consideration in estimating plaintiff's damages and the judgment covered the price of the shipments made to defendant and not paid for and the loss of profits from those which defendant refused to accept.

[1] The facts recited do not constitute mere negotiations preliminary to the execution of a formal contract. There is no evidence that any formal contract was contemplated but, on the other hand, it is apparent that the parties at all times treated the correspondence as the contract and intended it to be such. There was no essential feature which was either indefinite or uncertain except the matter of price and that was supplied by oral evidence. Though there was a conflict in this evidence the court was justified in finding that the sixteen cent price was agreed to. The contract called for the entire output of plaintiff's plant—there was no estimate of the amount which defendant might take—it agreed to take the entire crop. The defendant was notified that plaintiff contemplated the construction of four new hothouses and agreed to take the output of the entire plant. Then its agent was shown the plant while the tomatoes were ripening and expressed satisfaction over the prospect of a large yield. Such a contract to take the entire output of a plant for a given period is not void for want of mutuality. (*McIntyre Lumber Co.* v. *Jackson Lumber Co.*, 165 Ala. 268, 271, [138 Am. St. Rep. 66, 67, 51 South. 768]; *Bartlett Springs Co.* v. *Standard Box Co.*, 16 Cal. App. 671, 672, [117 Pac. 934]; 13 Corpus Juris, 338.)

[2] Defendant insists that the trial court erred in awarding damages above the amount tendered in defendant's answer. The argument is that for the 6783 pounds received by defendant prior to the repudiation of the contract plaintiff was entitled to recover the current market rate of six cents, which would make $406.98, the amount tendered. Then it is said that because plaintiff endeavored to sell the remainder of the crop in Bakersfield and Fresno only, and did not seek other markets in San Francisco and Los Angeles, he should be denied any damages for the loss suffered by the breach.

As to the tomatoes actually delivered to defendant they were sold under an express contract for sixteen cents a

pound, and plaintiff was entitled to recover on that basis. As to the portion of the crop not taken the court awarded damages at the contract price for such of the crop as was marketable, less the sum received by plaintiff through other sales. In this there was no error. There was evidence which would have supported a larger award of damages for the portion of the crop not taken and defendant is in no position to complain of the judgment on this score.

Judgment affirmed.

Langdon, P. J., and Sturtevant, J., concurred.