[Civ. No. 4470.   Second Appellate District, Division Two.—May 2, 1927.]

VENTURA REFINING COMPANY (a Corporation), Respondent, v. ROSEBERG OIL CORPORATION (a Corporation), Appellant.

[1] SALES—BREACH BY BUYER—RESALE UNNECESSARY—MEASURE OF DAMAGES.—Section 3311 of the Civil Code expressly contemplates that, upon a breach by the buyer under an executory contract for the sale of personal property, a resale by the seller is not a necessary prerequisite to the maintenance of an action for damages and in such action, the difference between the contract price and the market value is the measure of the detriment.

[2] ID.—MONTHLY DELIVERIES—BREACH—SUBSEQUENT NEGOTIATIONS— MEASURE OF DAMAGES—TIME.—In such action, where the contract called for monthly deliveries of oil, on shipping instructions to be given by defendant, the latter cannot complain that the trial court did not measure the damages as of the date of its first failure to give such instructions, where subsequent negotiations

---

1. Measure of damages against vendee for refusing to perform his contract to purchase, note, 67 **Am. Dec.** 275. See, also, 22 Cal. Jur. 1062; 24 **R. C. L.** 116.

2. Anticipatory repudiation of contract for sale of goods as affecting time as of which damages are to be computed, note, 34 **A. L. R.** 114. See, also, 22 **Cal. Jur.** 1069; 24 **R. C. L.** 120. Vendor's measure of damages for breach of installment contract, note, **Ann. Cas.** 1913C, 122.

were had looking to the acceptance by defendant of the oil, and the damages were measured as of the date such negotiations were terminated or a reasonable time thereafter.

[3] ID.—FAILURE TO GIVE SHIPPING INSTRUCTIONS—DELAY IN DECLARING BREACH—NEW OFFER.—In such action, defendant's failure or refusal for nine or ten months to supply shipping advices constituted a breach of the contract; and the fact that plaintiff failed to immediately declare a breach of the contract did not require it to continue to excuse the breach until the shipments had been completed, at a given monthly rate, under defendant's offer to enter into a new contract.

[4] ID.—CONSTRUCTION OF CONTRACT—PLEADING—EVIDENCE—VARIANCE. In such action, where defendant was fully apprised of the true situation, it could not have been prejudiced by reason of the variance between the complaint, wherein it was alleged that defendant "bought," and the evidence showing that defendant "had agreed to buy," certain tank-cars of gas oil.

(1) 35 Cyc., p. 585, n. 64.   (2) 35 Cyc., p. 591, n. 38, p. 592, n. 53.
(3) 35 Cyc., p. 125, n. 42, p. 583, n. 46.   (4) 35 Cyc., p. 588, n. 9.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Walton J. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Black, Hammack & Black for Appellant.

Robert M. Clarke and Charles W. Slack for Respondent.

THOMPSON, J.—The difficulties to be adjusted by this action arise out of the failure on the part of the defendant and appellant to accept and pay for the major portion of the oil agreed to be purchased by it, in the following contract:

"Los Angeles, Calif., January 10, 1921.
"Ventura Refining Company,
     "Title Insurance Building,
          "Los Angeles, California.
"Please enter order for account of the undersigned of the following commodities: Five tank cars each month 38–40 gravity Special Gas Oil.   The price hereby agreed to be paid therefor is at the rate of 9⅜c per gallon for said Spc. Gas Oil and at the rate of —— per —— for said —— f. o. b. Fillmore, California.   It is agreed that payment shall

be made by the undersigned, in United States gold coin, to Ventura Refining Company at its office in the city of Los Angeles, for all of said commodities loaded during each calendar month, to apply on account of said order at said point of Fillmore, Calif., on or before the 10th day of the next succeeding calendar month. In case of default in the making of such payments, or if the financial condition of the undersigned shall, in the opinion of Ventura Refining Company, have become impaired to an extent not foreseen, or existing, at the date of the acceptance of this order, then it is agreed that the whole amount in payment for all loadings actually made under this order, not yet paid for shall become due and payable immediately upon demand in writing and further loadings to apply on this order shall be suspended pending such payment, or this order may be cancelled forthwith at the option of Ventura Refining Company, without notice to the undersigned. It is agreed that all deliveries hereunder are contingent on conditions beyond the control of Ventura Refining Company; but said company will use its best efforts to make the following loadings: Fairly even monthly quantities between date and Jan. 10, 1922. T. E. N.—S. R. R. It is agreed that said price of 9⅜c per gallon for said Special Gas Oil is based upon the present published market price of 30 Gravity California Crude Oil at the well and said price is to be advanced or lowered ⅛c per gallon for each advance or decline of 5c per barrel in the published market price of 30 Gravity California Crude Oil at the well at time of delivery. S. R. Roseberg Very truly yours, Roseberg Oil Co. by S. R. Roseberg. No order is binding until the same shall have been accepted by a duly authorized officer of Ventura Refining Company. Shipping Address As directed Address for Invoices: 923 Santa Fe Ave., L. A. Calif. Rate of delivery 5 cars each month; size of cars: 10,000 gallon Credit approved: Roland Young T. E. Nichols Jr. Credit Department Salesman Order Accepted: Order Approved: Ventura Refining Co. v. F. C. Deinse Vice President T. W. Okey Sales Manager.''

Under this agreement the plaintiff shipped 10 tank-cars aggregating 101,639 gallons, the last of which was shipped on April 4, 1921. On May 13, 1921, a 25-cent per barrel decline in the price of crude oil reduced the contract price to 8¾ cents per gallon of the special gas oil, and on August

3d another decline reduced the price to 8⅛ cents per gallon. Subsequent to April 4, 1921, the defendant failed to give any further shipping instructions, although orally requested to do so once a month or oftener and many times in writing, and although, according to plaintiff's witness, "shipping instructions were many times promised" by defendant, "but were deferred and were not forthcoming." Negotiations for delivery and acceptance by defendant continued until after the time for complete performance, and even as late as January 17, 1922, the defendant indicated by letter that efforts were being made for acceptance of the oil. This letter was in response to plaintiff's communication of January 17, 1922, demanding that the oil be taken to relieve the storage capacity. Finally, on March 11, 1922, the defendant wrote plaintiff as follows:

"Los Angeles, California, March 11, 1922.
"Mr. S. P. van Deinse,
   "General Manager, Ventura Oil Refining Co.,
      "Los Angeles, Calif.
"Dear Sir: In order that we may settle the differences arising under the order that I signed January 10, 1921, to take five cars of oil per month for a period of one year at the prices named in the order, I having thus far accepted eight cars, I would suggest and will therefore offer that I take the remaining number of cars, namely, fifty-two, of the character of oil mentioned in that order and at the prices named in that order; the cars that I offer to take to be shipped at the minimum rate of six per month, commencing immediately, the terms of payment, price and quality to be as provided in the order I gave you on January 10, 1921. I hope you can see your way clear to accept this offer as an adjustment of the entire situation, as we always have been, and always ought to be the best of friends, doing business and as man to man.
                    "Yours very truly,
                         "ROSEBERG OIL CORP.,
                    "By S. R. ROSEBERG, President."

On March 23, 1922, plaintiff commenced this action to recover the difference between the contract price of the special gas oil and its market value in the market nearest to the place where defendant should have accepted the oil.

Judgment was recovered in the sum of $26,274.60, together with interest from March 23, 1922, at 7 per cent per annum in the sum of $1,783.77. Defendant prosecutes this appeal from the judgment thus entered.

On the trial it developed that the plaintiff made sales of the oil in considerable quantities at 3½ cents and 3¼ cents per gallon between January 24, 1922, and March 14, 1922, but was unable to resell the amount held for defendant. A witness testified that the market value on January 10, 1922, was from 3 to 3½ cents per gallon f. o. b. Fillmore. There was testimony that there was not an established or regular market value for this special oil between April, 1921, and March, 1922.

[1] Appellant's principal position may be briefly stated as follows: Assuming a breach of the agreement, that such breach occurred on or about March, 1921, and that it was the duty of plaintiff to sell the oil contracted for within a reasonable time thereafter, or at least to sell the deliveries due each month within a reasonable time after failure to take the monthly delivery. To support this argument, counsel contends that by reason of the contract being executory it was necessary for plaintiff to sell the oil at the best price obtainable in the nearest market and sue for the difference between the price received and the contract price; that without such resale plaintiff is not entitled to recover damages. We cannot assent to this doctrine, nor do the cases cited by appellant support it. Those authorities are of two classes, the first holding that the seller of personal property is not entitled to recover the selling price in actions on the contract, where title has not vested in the purchaser, but is confined to his action for damages, and the second holding that he has the right to sell under the provisions of sections 3049, 3311, and 3353 of the Civil Code, but that when he attempts to exercise the right he must do it within a reasonable time and that the sale must be for the market value. In some of the cases the expression is used that the seller not only has the right but it is his duty to sell—but such expressions were not necessary to the decisions and cannot be accepted as authoritative in the face of direct precedent to the contrary, and despite the express language of the sections of the Civil Code to the contrary, and in direct violation of the logic of such situations. Reversing the order thus

stated: What difference can it make to the purchaser whether the seller conducts a sale at the market value, or keeps the goods himself and credits the damages with the market value—the seller himself becoming in effect and in logic the purchaser? It would be the superlative refinement of legal sophistry to hold to such a distinction.   Again, section 3311 of the Civil Code says: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: 1. If the property has been resold, pursuant to section three thousand and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale; or, 2. If the property has not been resold in the manner prescribed by section three thousand and forty-nine, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it." Section 3049 of the Civil Code simply provides for a seller's lien dependent on possession, giving to him the right of sale as though the property were pledged to satisfy the lien. It is apparent therefore that section 3311 expressly contemplates that a resale by the seller is not a necessary prerequisite to the maintenance of an action for damages in which the difference between the contract price and the market value is the measure of the detriment. It has been so held. (See *Cuthill* v. *Peabody,* 19 Cal. App. 304 [125 Pac. 926]; *Lillie* v. *Weyl-Zuckerman & Co.,* 45 Cal. App. 607 [188 Pac. 619]; *Central Oil Co.* v. *Southern Refining Co.,* 154 Cal. 165 [97 Pac. 177]; *Oldershaw* v. *Kingsbaker Bros. Co.,* 53 Cal. App. 667 [200 Pac. 729].)

[2] In one sense our conclusion upon this branch of the first question obviates the necessity of an extended discussion of that portion, which is, that the breach of the contract, if one in fact existed, occurred in March, 1921. There is some confusion in the specific date, due no doubt to the fact that as the appellant's brief shows, the defendant was under the belief that it accepted only six or perhaps eight carloads of oil, the last of which was in March, 1921, while the record justifies the conclusion and the court in effect

found that ten cars were in fact shipped, the last of which was as stated above, on April 4, 1921. The question, however, is not affected. In substance it is that the market value within a reasonable time after the first failure to give shipping instructions instead of the market value within a reasonable time after the arrival of the date for the complete performance, should be the unit used in determining the deduction from the contract price. The court did not find the market value as of a certain date, but did find that "the price which plaintiff could, by reasonable diligence have obtained for the same at the place nearest to where the defendant should have received the said oil from the plaintiff was the sum of 3¼c per gallon." Under the testimony which we have already recited this finding would be justified, though the date were considered as immediately following April 4, 1921, or following January 10, 1922. It was shown that there was no regular established market during this entire period, and although the witness testified to the price on January 10, 1922, resort was had to other sales made in January, February, and March of 1922 to fix the market value. Be that as it may, however, there can be no doubt but that negotiations were pending during this entire period looking to the acceptance by the defendant of the oil. It cannot be questioned under these circumstances that plaintiff assented by its acts and its statements to an extension of time within which defendant might accept—and not until after January 17, 1922, did plaintiff terminate the negotiations. It does not rest with defendant to complain on this score when it sought and was granted further time within which to supply shipping instructions. We find apt language in the case of *Roberts* v. *Benjamin,* 124 U. S. 64 [31 L. Ed. 334, 8 Sup. Ct. Rep. 393, see, also, Rose's U. S. Notes], to fit the situation here: "It is contended by the defendants that the referee erred in taking the $34 per ton, the market value of the iron on November 7, 1879, as the measure of damages, instead of the market price in September, when the iron was to be delivered, and when, it is alleged, the breach of the contract occurred. But, although the defendants did not deliver any of the iron on or about September 1, 1879, nor as soon as they had manufactured the required amount, yet it appears from the findings of fact, considered together, that the breach of the contract

did not take place until November 7, 1879. The statement in the findings, that the defendants 'postponed the execution of the contract from time to time,' and finally insisted upon certain requirements as conditions of the delivery of the iron, must be accepted as a statement that the postponement of the execution of the contract was with the assent of the plaintiff. From the fact that, as late as November 7, 1879, the defendants were naming conditions on which they would deliver the iron, it must be inferred that the question of delivery was still regarded by both parties as an open one, and that the mere failure to deliver the iron by the first of September, 1879, or even thereafter as soon as the required amount had been manufactured, was not regarded by either party as a breach of the contract." To the same effect where delivery is deferred by request of buyer see *Kutztown Foundry & M. Co.* v. *Sloss-Sheffield S. & I. Co.*, 279 Fed. 627. Almost the identical principle was applied in an action where an anticipatory breach was coupled with an embargo, during the late World War. In the case of *United States Trading Corp.* v. *Newmark G. Co.*, 56 Cal. App. 176 [205 Pac. 29], it was held that "notwithstanding defendant's attempted anticipatory breach on October 7, 1919, plaintiff, by its election, could refuse to accept such attempted renunciation by defendant of its contract obligations, could treat the contract as subsisting, and could sue for a breach of contract after the termination of the embargo."

[3] Appellant's next assertion is that there was no breach of the contract by the defendant. We quote one sentence from appellant's brief on this point which answers defendant's own argument, "The evidence in this case clearly shows that while in an embarrassed position the defendant kept putting off from time to time the actual taking of the product, and the plaintiff from time to time acquiesced in this situation by its failure to declare any breach and even while further negotiations were pending and before they had been acted upon the plaintiff started an action." The sum of this argument is that because plaintiff had excused the breach in the past it should continue to excuse it in the future until under the offer made by defendant to enter into a new contract, as evidenced by its letter of March 11, 1922, the shipments had been com-

pleted at the rate of six cars per month. Plaintiff was under no obligation to accept this new offer. Nor can there be any doubt that defendant's failure and refusal for nine or ten months to supply shipping advices constituted a breach.

[4] Appellant also claims a material and fatal variance between the allegations of the complaint which alleged that by "an agreement in writing, . . . the plaintiff sold to the defendant and the said defendant bought of said plaintiff 60 tank cars . . . of . . . special gas oil, to be delivered in fairly even monthly quantities,—five (5) tank cars each month between January 10, 1921, and January 10, 1922, at Fillmore, California" and the proof which consisted of the contract heretofore recited. There was also an allegation in the complaint concerning the market value in "the market nearest to the place at which it should have been accepted." We fail to see any material variance. Defendant was undoubtedly apprised of the true situation and could not have been prejudiced by plaintiff's failure to allege in precise language "that defendant had *agreed to buy*" instead of the words actually used "defendant bought." (Italics ours.)

From the discussion so far it is evident that it is not necessary for us to treat the point raised in appellant's reply brief that the court failed to find that the sale made by defendant was within a reasonable time. In the first place the sale was not a resale of the property agreed to be purchased and therefore that question was not in issue. In the second place we have already determined that the market value was to be determined as of a reasonable time after January 10, 1922.

Craig and Johnson, J., *pro tem.,* concurred.